

DAVID E. RICE
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

In re:                                              )
                                                    )
ASSATA N. PETERSON,                                 )          Case No. 16-13521-DER
                                                    )              (Chapter 13)
                            Debtor.                 )
_____                 )

## <u>MEMORANDUM OPINION</u>

       This is the second of two cases in which this court was asked to determine the extent to which a condominium should be granted relief from the automatic stay to pursue collection of post-petition assessments from a debtor who surrendered an over-encumbered condominium unit under a previously confirmed Chapter 13 plan. Neither the lender nor the condominium objected to confirmation of that plan. Unlike the plan considered in *In re Wiley*, 2018 W.L. 604401, ___ B.R. ___ (Bankr. D. Md. Jan. 26, 2018), however, the plan in this case provided not just for the unit to be surrendered, but also for title to be vested in the lender upon confirmation pursuant to 11 U.S.C. § 1322(b)(9). Because a confirmed plan is binding on the parties, the court concludes that in this case the condominium also should be granted relief from the stay, but only to pursue collection from the debtor of the post-petition assessments that accrued prior to confirmation of the Chapter 13 plan.

The court has before it the Motion for Relief from Automatic Stay (the "Motion") filed by The Newport Condominium Association, Board of Directors and Council of Unit Owners (the "Condominium"), and the Opposition filed by the debtor, Assata N. Peterson (the "Debtor"). The Condominium requests termination of the automatic stay to (i) foreclose its *in rem* lien rights against the Debtor's condominium unit, and (ii) pursue an *in personam* collection action against the Debtor for unpaid assessments that accrued after commencement of this case. The Debtor does not oppose enforcement of *in rem* rights against her unit, but takes the position that she has no ongoing *in personam* liability for the post-petition assessments because under the terms of her confirmed Chapter 13 plan (i) the unit was surrendered to lienholders, (ii) the surrender was in full satisfaction of the underlying claims secured by the unit, and (iii) title to the unit was vested in the first priority mortgage lender, which was identified in the plan as Residential Credit Solutions, Inc. ("RCS").[1]

The court conducted an evidentiary hearing on the Motion, following which the court held this matter under advisement and requested the parties to each submit a memorandum of law. After due deliberation and consideration of the memoranda, the court is prepared to rule on this matter.

### Jurisdiction

The court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(G). This memorandum

---

[1] Shortly after the Debtor's Chapter 13 plan was filed (but some seven weeks before the plan was confirmed), Ditech Financial LLC ("Ditech") filed a proof of claim in this court in October of 2016 indicating that RCS assigned its mortgage on the Debtor's unit to Ditech in May of 2016. Kyle Moulding entered his appearance in this case as counsel for Ditech on July 1, 2016. As a result and by reason of the CM/ECF electronic notice to Mr. Moulding, Ditech was served through its attorney with notice of the Debtor's plan and the other material events that transpired and actions that were proposed in this case after July 1, 2016. Except as otherwise noted, the holder of the first mortgage is hereafter referred to throughout this opinion as RCS because any distinction between RCS and Ditech is not material to the issues now before this court.

opinion constitutes the court's findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure (made applicable here by Rules 4001(a)(1), 7052, and 9014 of the Federal Rules of Bankruptcy Procedure).[2]

### Findings of Fact

Based upon the hearing, the court makes the following findings of fact which the court understands are not disputed.

This case was commenced when the Debtor filed a voluntary petition in this court on March 18, 2016 (the "Petition Date") seeking relief under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code"). On the Petition Date, the Debtor owned real property commonly known as Unit 1413N, 4800 S. Chicago Beach Drive, Chicago, Illinois 60615 (the "Property").[3] The Property is situated in The Newport Condominium, which is located in Cook County, Illinois. The Debtor has not lived at, used, or leased the Property at any time after the Petition Date.[4]

Under the terms of the Declaration of Condominium Ownership for the Newport Condominium recorded in the Land Records for Cook County, Illinois (the "Declaration"), unit owners are obligated to make monthly payments to the Condominium to cover the common expenses to the Condominium. The Declaration provides in pertinent part as follows:

> [E]ach Owner of a Unit Ownership *by acceptance of a deed therefor*, whether or not it shall be so expressed *in any such deed or other conveyance*, shall be and is deemed to covenant and hereby agrees to pay to the Association such assessments or other charges or payments as are levied pursuant to this Declaration. Such assessments, or other charges or

---

[2] To the extent any finding of fact may constitute a conclusion of law, it is adopted as such. To the extent any conclusion of law may constitute a finding of fact, it is adopted as such.

[3] In addition to the unit, the Debtor was also the owner on the Petition Date of related rights to what is referred to as non-exclusive garage right No. 148, which consists of the right to park one passenger automobile in the Condominium's garage. For purposes of this memorandum opinion the distinction between the unit and the garage right is immaterial and thus any subsequent reference to the Property includes both the unit and the garage right.

[4] At the hearing, counsel for the Debtor represented to the court that he understood that a squatter may now be occupying the Property.

> payments, together with interest thereon and costs of collection, if any, as herein provided, shall be a charge on the Unit Ownership against which each such assessment is made. Each such assessment, or other charge or payment, together with such interests and costs, shall also be the personal obligation of the Owner of such Unit Ownership *at the time when the assessment or other charge or payment is due*.

Declaration, § 6.01 (emphasis added).[5] Thus, if such amounts are not timely paid, unit owners are obligated to pay the Condominium the amount of the past due assessments, plus late fees, interest, and attorney's fees; all such amounts constitute a lien on the owner's unit and may be collected by the Condominium by either (i) foreclosure of its lien against the unit, or (ii) the filing of a collection lawsuit *in personam* against the owner of the unit at the time the particular assessment is due.

The Property is subject to two mortgages. According to the proofs of claim filed by the secured creditors, as of the Petition Date the Debtor owed $99,137.14 secured by the first mortgage and $28,062.71 secured by the second mortgage.[6] No objection has been filed with respect to allowance of either proof of claim. In her Schedules, the Debtor stated that the value of the Property as of the Petition Date was $50,000.00. Apparently, RCS instituted a foreclosure proceeding against the Property in state court in Illinois prior to the Petition Date, but the parties are uncertain as to the status of that proceeding. The Debtor does not dispute the Condominium's contention that she is the record owner of the Property according to the Land Records of Cook County, Illinois.

---

[5] The Condominium attached to the Motion what it alleged were portions of the relevant sections of the Declaration. The Debtor filed an opposition to the Motion that did not include detailed answers to each numbered paragraph of the Motion as required by Rule 4001-1(d)(3) of the Local Rules of the United States Bankruptcy Court for the District of Maryland. Accordingly, the Debtor has admitted that the exhibit contains the relevant sections of the Declaration.

[6] According to its proof of claim filed with the court, the holder of the second mortgage is Specialized Loan Servicing LLC, as servicer for U.S. Bank National Association as Indenture Trustee of the GMACM Home Equity Loan Trust 2007 HE-1 ("SLS").

Although the Condominium did not file a proof of claim, it is also a secured creditor of the Debtor. According to the terms of the Declaration, however, the priority of the Condominium's lien is subordinate to at least the first mortgage.[7] At the time the Motion was filed, the Condominium asserted that it was owed under the Declaration at least $12,420.08 for assessments, late fees and other charges with respect to the Property that were due for time periods after the Petition Date. According to the Ledger attached to the Motion, however, the amount due at the time the Court confirmed the Debtor's plan was only $4,096.05.

In addition, the court takes judicial notice of the following facts which are also not in dispute and which can be determined from the record in this case. On November 29, 2016, this court entered an Order Confirming Plan (the "Confirmation Order") that confirmed the Debtor's amended Chapter 13 plan filed on September 26, 2016 (the "Chapter 13 Plan"). The Debtor served the Chapter 13 Plan on RCS, Ditech, SLS, and the Condominium. The only objection to confirmation of the Chapter 13 Plan was filed by the Chapter 13 Trustee, whose objection was resolved prior to the confirmation hearing scheduled for November 22, 2016.

With respect to the Property and the secured claims of RCS, SLS, and the Condominium, the Chapter 13 Plan provides in pertinent part as follows:

> The following secured claims will be satisfied through surrender of the collateral securing the claims (describe the collateral); any allowed claims for deficiencies will be paid pro rata with general unsecured creditors; upon confirmation of the plan, the automatic stay is lifted, if not modified earlier, as to the collateral of the listed creditors:
>
> [Thereafter, the Debtor lists RCS, SLS, and the Condominium as claimants, states an amount for each of their claims, and describes the collateral of each of them as the Property.]

---

[7] The Declaration provides that "[t]he lien on each Unit Ownership provided for in Section 6.01 for assessments or other charges or payments shall be subordinate to *the lien of any first mortgage* on the Unit Ownership recorded prior to the date that any such assessments or other charges or payments become due." Declaration, § 6.10 (emphasis added). Based upon the proof of claim filed by Ditech, the first mortgage appears to have been recorded with the Cook County Recorder of Deeds on January 29, 2007.

Amended Chapter 13 Plan, ¶ 2(e)(iv) [Docket No. 41, Page 2 of 3].  In addition, the Chapter 13

Plan contained the following relevant nonstandard provision:

> All collateral listed in ¶ 2(e)(iv) claims is surrendered in full satisfaction of
> the underlying claims secured by the collateral.  Pursuant to §§ 1322(b)(8)
> and (9), title to the [Property] shall vest in Residential Credit Solutions
> upon confirmation, and the Confirmation Order shall constitute a deed of
> conveyance of the Property when recorded at the applicable Land Records
> office.

Amended Chapter 13 Plan, ¶ 8 [Docket No. 41, Page 3 of 3].  None of RCS, Ditech, SLS, or the

Condominium filed a notice of appeal from the Confirmation Order, which order is now, and

long has been, a final order.  The Confirmation Order provides (consistent with the terms of the

Chapter 13 Plan)[8] that "the property of the estate shall not vest in the Debtor until the Debtor is

granted a discharge or the case is dismissed or otherwise terminated."  Order Confirming Plan

[Docket No. 49, page 1 of 2].

## Conclusions of Law

The outcome here is in large part governed by this court's recent decision in *Wiley*.  In

this case (like that one) the Condominium seeks relief from the automatic stay to enforce its *in

rem* and *in personam* collection rights against the Property and the Debtor.  For the reasons

stated in *Wiley*, in light of confirmation of the Chapter 13 Plan there is no reason why any further

order of this court is needed should the Condominium decide to enforce its *in rem* rights against

the Property.  2018 W.L. 604401 at *4, ___ B.R. at ___.  Likewise, even though such claims may

be subject to a § 1328(a) discharge (should the Debtor ultimately obtain one), the Condominium

should be granted relief from stay to file an *in personam* action against the Debtor in order to

---

[8] The Chapter 13 Plan contains the then standard language of this District's form Chapter 13 plan (Local
Bankruptcy Form M) which provided, "Title to the Debtor's property shall revest in the Debtor when the Debtor is
granted a discharge pursuant to 11 U.S.C. § 1328, or upon dismissal of the case, or upon closing of the case."
Amended Chapter 13 Plan, ¶ 7 [Docket No. 41, Page 3 of 3].

reduce to judgment at least some portion of its claim for assessments due after the Petition Date. *Id*. at *9, ___ B.R. at ___. And, as in *Wiley*, the relief granted does not include the right to enforce any such judgment against property of the Debtor's estate. *Id*. Resolution of this case, however, requires consideration of an issue not addressed in *Wiley*—that is, the impact of the Chapter 13 Plan provision specifying that upon confirmation title to the Property vested in RCS pursuant to § 1322(b)(9).

It is of course true that the Debtor also argues that the surrender provisions of her Chapter 13 Plan bar the Condominium from collecting any post-petition assessments from her individually because such claims were satisfied by surrender upon confirmation. That argument, however, fails for two reasons. First, a surrender under § 1325(a)(5)(C) merely means that the debtor will make the collateral available to the secured creditor and not oppose the creditor's exercise of its *in rem* rights. A debtor cannot compel a secured creditor to accept surrender or to foreclose. *In re Khan*, 504 B.R. 409, 410 (Bankr. D. Md. 2014). Second, the standard form language of Paragraph 2(e)(iv) of the Chapter 13 Plan makes clear that the surrender is in satisfaction of the "secured claims" of the Condominium and that "any allowed claims for deficiencies will be paid pro rata with general unsecured claims." Such language is inconsistent with the assertion that the *in personam* claims of the Condominium have been extinguished by the surrender.

In addition, the Debtor points to the first sentence of Paragraph 8 of the Chapter 13 Plan to support her argument. That sentence is mere surplusage that reiterates the meaning and effect of surrender under Paragraph 2(e)(iv); it would be inappropriate to give the language of Paragraph 8 an interpretation so as to negate the meaning of Paragraph 2(e)(iv). Such an extraordinary application of surrender—effectively converting surrender into a release of

liability—would be appropriate (if at all) only if separately set forth solely as a standalone nonstandard provision in Paragraph 8. That is not what the Debtor did in this instance and the court declines to read the, at best confusing, language of the Chapter 13 Plan to have such an extraordinary meaning and effect.

The Debtor therefore understandably places more emphasis on her argument based on the forced vesting provision in the second sentence of Paragraph 8 of her Chapter 13 Plan. The validity and effect of a vesting provision coupled in a Chapter 13 plan with one for surrender of collateral pursuant to § 1325(a)(5)(C) is an issue of bankruptcy law about which courts have disagreed. Neither the Supreme Court nor the Fourth Circuit has spoken on the issue. In 2013, a plan containing such a provision was confirmed over the standing trustee's objection in the District of Hawaii. *In re Rosa*, 495 B.R. 522 (Bankr. D. Hawaii 2013).[9] One year later, the only lower court in the Fourth Circuit that has addressed the issue rejected *Rosa* and held that a mortgage holder could not be compelled to accept title to its collateral. *In re Rose*, 512 B.R. 790 (Bankr. W.D.N.C. 2014).[10]

Thereafter, a number of bankruptcy courts rejected *Rose* and followed *Rosa*. *See, e.g., In re Stewart*, 536 B.R. 273 (Bankr. D. Minn. 2015); *In re Zair*, 535 B.R. 15 (Bankr. E.D.N.Y. 2015); *In re Watt*, 520 B.R. 834 (Bankr. D. Or. 2014); *In re Sagendorph*, 2015 W.L. 3867955 (Bankr. D. Mass. June 22, 2015). Other courts, however, followed *Rose* and held that a forced vesting plan cannot be confirmed over the objection of the secured creditor. *See, e.g., In re*

---

[9] In *Rosa*, the court considered whether it should confirm a Chapter 13 plan that contained provisions that both surrendered real property and vested title to that property in the first mortgage holder. The holder of the first mortgage did not object to confirmation. The court confirmed the plan because "the first mortgagee received adequate notice (as far as the record reveals) and did not object." *In re Rosa*, 495 B.R. at 525.

[10] The *Rose* opinion stemmed from a dispute that arose after confirmation of a Chapter 13 plan that apparently contained only a provision for surrender of collateral pursuant to § 1325(a)(5)(C). One year later, the debtors sought to quitclaim the property to the secured lender because the lender had not foreclosed on its mortgage. In the course of rejecting the argument that surrender requires a secured creditor to accept the surrendered property, the *Rose* court also considered (in dicta) whether vesting pursuant to § 1322(b)(9) could require a secured creditor to accept title to its collateral and declined to adopt *Rosa*. *In re Rose*, 512 B.R. at 794-95.

*Brown*, 563 B.R. 451 (D. Mass. 2017) (reversing on appeal a bankruptcy court order confirming plan vesting title in an unwilling secured creditor); *Wells Fargo Bank v. Sagendorph (In re Sagendorph)*, 562 B.R. 545 (D. Mass. 2017) (reversing *Sagendorph* on appeal); *HSBC Bank USA v. Zair (In re Zair)*, 550 B.R. 188 (E.D.N.Y. 2016) (reversing *Zair* on appeal); *Bank of New York Mellon v. Watt (in re Watt)*, 2015 W.L. 1879680 (D. Ore. April 22, 2015) (reversing *Watt*); *In re Williams*, 542 B.R. 514 (Bankr. D. Kan. 2015).[11]  The majority view and more recent trend—particularly in light of the outcome on appeal in district courts—seems to follow *Rose* and favor interpretation of § 1325(a)(5)(C) to preclude confirmation over a secured creditor's objection of a Chapter 13 plan that vests title to collateral in the creditor.

This court need not resolve that question in order to rule on the Motion because the Condominium is not before this court objecting to confirmation. In this case, the Debtor's Chapter 13 Plan was confirmed long ago without objection.  The terms of the Chapter 13 Plan "bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a).  It is well settled that confirmation of a Chapter 13 plan has *res judicata* effect not only as to any issue actually litigated, but also as to any issue necessarily determined by an order of confirmation.  *Bullard v. Blue Hills Bank*, 135 S.Ct. 1686 (2015); *United Student Aid Funds v. Espinoza*, 130 S.Ct. 1367, 1376 (2010); *Covert v. LVNV Funding*, 779 F.3d 242, 246 (4th Cir. 2015); *In re Linkous*, 990 F.2d 160, 162 (4th Cir. 1993).  As the Supreme Court

---

[11]  With the exception of *Stewart*, these decisions arose in the context of secured creditor objections to confirmation of Chapter 13 plans containing forced vesting provisions.  In *Stewart*, a confirmed Chapter 13 plan contained provisions that both surrendered the collateral to, and vested title in, the secured creditor.  Well after confirmation, the debtor filed a motion seeking an order compelling the secured creditor to accept transfer of the property in satisfaction of its claim.  After analyzing the bankruptcy court opinions in *Watt*, *Sagendorph* and *Zair* (all of which were later reversed on appeal to the district court), the *Stewart* court stated that while the concepts of surrender and vesting "are different, they may nonetheless be used in tandem when providing for the treatment of a secure claim in a chapter 13 plan." *In re Stewart*, 536 B.R. at 277.  Having said that, however, the *Stewart* court went on to grant the debtor's motion because the secured creditor had notice of, did not object to, and was bound by the confirmed plan by reason of § 1327(a) and the Supreme Court's decision in *Bullard v. Blue Hills Bank*.  536 B.R. at 277-78.

said in *Ballard*, confirmation of a Chapter 13 plan "alters the status quo and fixes the rights and obligations of the parties. When the bankruptcy court confirms a plan, its terms become binding on debtor and creditor alike." 135 S.Ct. at 1692 (citing 11 U.S.C. § 1327(a)). Thus, the only question here is the extent to which the now binding provisions of the confirmed plan surrendering the Property and vesting title in RCS impact the Condominium's request for relief from the automatic stay.

The Condominium asserts that the answer lies in the Land Records of Cook County, Illinois where the Debtor is reflected as the current owner of record of the Property. RCS has yet to record a copy of the Confirmation Order, which Paragraph 8 of the Chapter 13 Plan states "shall constitute a deed of conveyance of the Property when recorded at the applicable Land Records office." The Condominium's position is that under Illinois law and the Declaration the Debtor's individual liability for assessments continues so long as the Confirmation Order remains unrecorded in the Land Records. It is certainly the case that as the Supreme Court has said, "Property interests are created and defined by state law." *Butner v. United States*, 99 S.Ct. 914, 918 (1979). But, as the Supreme Court immediately went on to explain there is no reason to deviate from the state law result unless "some federal interest requires a different result." *Id*. In this instance, Congress adopted § 1329(b)(9) which expressly permits title to property to be vested upon confirmation of a Chapter 13 plan "in the debtor or in any other entity." The language of the federal statute is clear; title vests on confirmation. To permit Illinois law to dictate some other result would be to ignore the preemption of state law under the Supremacy Clause of the Constitution. Thus, as amongst the parties bound by the Chapter 13 Plan this court must look to the terms of the plan, not to Illinois law.

The Condominium is bound by the terms of the Chapter 13 Plan which vested title to the Property in RCS upon entry of the Confirmation Order. It is of no consequence as amongst the Debtor, RCS, and the Condominium that RCS has thus far chosen to hold its title to the Property off record by not recording the Confirmation Order in the Land Records. The second sentence of Paragraph 8 of the Chapter 13 Plan does not give RCS the option to accept or reject vesting of title to the Property; the language merely means what it plainly says—that is, that RCS may record the Confirmation Order as if it were a deed to the Property. Regardless of whether RCS ever does so, the parties are bound by the vesting provision of the Chapter 13 Plan. As a result, for purposes of determining the appropriate relief to grant to the Condominium this court must treat RCS as the owner of the Property as of November 29, 2016, the date on which the Confirmation Order was entered.

In its memorandum the Condominium directs the court to two unpublished opinions that it contends support a different conclusion, *In re Schechter*, 2012 W.L. 3555414 (Bankr. E.D. Va. Aug. 16, 2012),[12] and *In re Langenderfer*, 2012 W.L. 1414301 (Bankr. N.D. Ohio April 23, 2012).[13] In both cases, courts considered issues related to condominium ownership and liabilities of debtors for post-petition assessments. In doing so, the courts rejected the contention

---

[12] In *Schechter*, the court rejected a Chapter 13 debtor's argument that the automatic stay should not be lifted to permit collection of post-petition assessments because she had surrendered her unit under her confirmed Chapter 13 plan. In *Wiley*, this court declined to adopt the *Schechter* court's application of the Fourth Circuit's opinion in *River Place East Housing Corp. v. Rosenfeld (In re Rosenfeld)*, 23 F.3d 833 (4th Cir. 1994). *Wiley*, 2018 WL 604401 at *5, ___ B.R. at ___. On the other hand, this court does not disagree with the *Schechter* court's apparent adoption of the condominium's contention that "because the Debtor has not transferred title to the Property, she remains record owner of same and, therefore, is obligated to pay ongoing condominium assessments, notwithstanding her 'surrendering' of the Property under a confirmed Chapter 13 plan." *In re Schechter*, 2012 W.L. 3555414 at *3.

[13] In *Langenderfer*, a Chapter 7 debtor asserted violation of the automatic stay when a condominium filed a state court lawsuit to collect post-petition assessments that accrued up until the time that her unit was sold at sheriff's sale. The debtor argued that she was not liable because she had abandoned and surrendered possession of the unit. The *Langenderfer* court properly denied the debtor's request for sanctions because she remained the owner of the unit and such debts are not discharged by reason of § 523(a)(16) of the Bankruptcy Code. *In re Langenderfer*, 2012 W.L. 1414301 at *2.

that surrender of a condominium extinguished a debtor's liability for post-petition assessments and made clear that such surrender does not result in transfer of ownership. Neither of those cases, however, considered the effect of vesting of title pursuant to § 1322(b)(9). In this case, title to the Property vested in RCS when the Confirmation Order was entered. For that reason, this court must conclude that as of that date RCS, not the Debtor, is the owner of the Property for purposes of the issues now before the court. Like an unrecorded deed, the Confirmation Order is effective and enforceable with respect to the parties and those on notice of its existence. Thus, the Condominium may have remedies for assessments and charges arising from and after November 30, 2016, but such remedies do not lie against the Debtor.

The Condominium should thus be granted relief consistent with *Wiley*, but only with respect to assessments and other charges related to the Property for the time period from March 13, 2016 to November 29, 2016. Accordingly, any and all other relief sought by the Condominium must be denied.

### Conclusion

For the reasons stated above, the court will enter a separate order consistent with this memorandum opinion that grants in part and denies in part the Motion for Relief from Automatic Stay filed by the Condominium.

cc:    Brett Weiss, Esq.
       Chung & Press, LLC
       6404 Ivy Lane, Suite 650
       Greenbelt, Maryland 20770
       *Attorney for the Debtor, Assata N. Peterson*

Kathleen M. Elmore, Esq.
Elmore & Throop, P.C.
5 Riggs Avenue, P.O. Box 1473
Severna Park, Maryland 21146
*Attorney for the Movant, The Newport Condominium, Board of Directors and Council of Unit Owners*

Nancy Spencer Grigsby
185 Admiral Cochrane Drive, Suite 240
Annapolis, Maryland 21401
*Chapter 13 Trustee*

**-- END OF MEMORANDUM OPINION --**